

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 25, 2008

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Richard Bright,</u>
              07 Cr. 690-01 (JGK)

Dear Judge Koeltl:

      The Government respectfully submits this letter in advance of the sentencing of Richard Bright (the "defendant"), which is scheduled for Friday, February 29, 2008, at 9:30 a.m.

## Offense Conduct

      As described in more detail in the Presentence report, on September 21, 2005, in the area of East 156th street in the Bronx, New York, Richard Bright, the defendant, also known as "Stutter Butter," was observed by witnesses shooting a second individual, Jose Monclova, with a firearm.  (PSR ¶ 7, 40).  A woman named "Jessica," who lived in the area, observed Bright committing this crime, saw him discard the firearm that he used to commit the crime, and called 911. (PSR ¶ 8).  A recording was made of the 911 call, in which Jessica provided a description of the shooter and the location of the shooter's discarded firearm. (PSR ¶ 10). This recording was later played at Richard Bright's trial for attempted murder and criminal possession of a weapon in New York Supreme Court, Bronx County. Bright was acquitted of the attempted murder charge and found guilty of criminal possession of a weapon. He was subsequently sent to a correctional facility in upstate New York. (PSR ¶ 9).

      In February 2007, while still detained, Bright drafted a letter to Jessica which contained threats to injure her and her son. (PSR ¶ 10). He sent the letter to her through the U.S. Postal system. When later confronted by agents of the Federal Bureau of Investigation, Bright admitted that he had drafted the letter and sent it to Jessica. He stated that he had been able to identify her voice when the 911 call was played at his trial.  (PSR ¶ 10).

## Discussion

      The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although Booker held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme

Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, at 596 (Dec. 10, 2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). Gall v. United States, 128 S. Ct. 586, at 596-97.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. 586, at 597 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. 586, at 594; see also Rita v. United States, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. 586, at 597.

Here, where the offense level is 10, and the Criminal History Category is VI, the Guidelines range is 24-30 months' imprisonment, and the Guidelines provide that range must be satisfied by a term of imprisonment within that range.[1] U.S.S.G. § 5C1.1(f) & comment (n.8). This sentence conforms with the statutory maximum term of imprisonment of 5 years. 18 U.S.C. § 876(c). In addition, the Guidelines range for a term of supervised release to follow imprisonment is at least two years but not more than three years. U.S.S.G. § 5D1.2(a)(2). This

---

[1]   The PSR's conclusion that the applicable criminal history category is VI is one category higher than the calculation in the *Pimentel* letter that was sent to the defendant in November of 2007. The Government agrees with the calculation of the U.S. Probation Department.

term of supervised release corresponds with that permitted for this offense pursuant to 18 U.S.C. § 3583(b)(2), which may not exceed three years.

Of course, as described above, the Guidelines are not mandatory. But in this case where the defendant has demonstrated a clear lack of respect the law and for the safety of the public, a sentence within the Guidelines range is appropriate, and certainly cannot be said to be "greater than necessary" to achieve the legitimate purposes of sentencing. 18 U.S.C. § 3553(a). The defendant in this case issued a direct threat against a witness to an attempted murder and her minor son. (PSR ¶ 10). *See* 18 U.S.C. § 3553(a)(1). The need to protect the public from the fulfillment of those threats, and other actions on the part of the defendant, indicates that a Guidelines sentence is appropriate. *See* 18 U.S.C. § 3553(a)(2)(C). Moreover, the need for general deterrence is heavily implicated in this case, where the defendant's actions occurred while he was in prison for other, related, criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). The defendant's actions constituted an flagrant attempt to undermine an essential element of our criminal justice system – the ability of members of the public to report crime without fear of reprisals. Threats against witnesses must be adequately punished in order to promote the willingness of the public to report such crimes and thereby to promote public safety and a respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A).

## Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:      /s/
Randall Jackson
Assistant United States Attorney
212-637-1029

cc:    Fiona Doherty, Esq.